# EXHIBIT 4

Clerk of the Superior Court
*** Electronically Filed ***
C. Cuellar, Deputy
4/26/2021 12:29:56 PM
Filing ID 12818444

Anne E. Findling, Esq. (010871)
Lauren E. Channell, Esq. (033484)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home, #B-100
Phoenix, Arizona 85012
Tel: 602-285-0100
Fax: 602-265-0267
anne@robbinsandcurtin.com
lauren@robbinsandcurtin.com
*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| **MARCELLA FOX**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**STATE OF ARIZONA**, a body politic; **JASON MCCLELLAND**, an individual, on his own behalf and on behalf of his marital community; **JEFFREY VAN WINKLE**, an individual, on his own behalf and on behalf of his marital community; **CHARLES RYAN**, an individual, on his own behalf and on behalf of his marital community; and **DAVID SHINN**, an individual, on his own behalf and on behalf of his marital community,<br><br>Defendants. | No. CV2021-006796<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>(Tort – Non-Motor Vehicle – Civil Rights)<br><br>(Rule 26.2 Discovery Tier 3) |

Plaintiff Marcella Fox complains against Defendants and alleges as follows:

### PARTIES

1. Marcella Fox (hereinafter "Plaintiff") is a resident of the State of Arizona.

2. Plaintiff, at all relevant times, worked as a nurse at Arizona State Prison Complex ("ASPC") – Florence Central Unit and was employed by the prison's healthcare contractor, Centurion.

3. Defendant State of Arizona is a governmental entity organized under the

1 Constitution of the United States. Its subdivisions or agencies include the Arizona Department of Corrections ("ADOC").

4. Defendant Jason McClelland, at all times alleged herein, was a correctional sergeant employed by ADOC and was acting within the course and scope of his employment and under the color of state law. He is, and was, a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

5. Defendant Jeffrey Van Winkle, at all times alleged herein, was employed by Defendant State of Arizona as the Warden for ASPC – Florence Central Unit and was a final policymaker responsible for making and enforcing official policies at ASPC – Florence Central Unit.

6. Defendant Charles Ryan was employed by Defendant State of Arizona as the Director of ADOC from approximately 2009 through September 2019, and during that time, he was a final policymaker responsible for making and enforcing official policies at all state prisons, including ASPC – Florence Central Unit.

7. Defendant David Shinn is and was the Director of ADOC since approximately October 2019. He is and was a final policymaker responsible for making and enforcing official policies at all state prisons, including ASPC – Florence Central Unit.

8. Defendant State of Arizona is liable for the acts and omissions of its employees within the scope of their employment, including Defendant Jason McClelland and other ADOC officers and employees, under the doctrine of *respondeat superior*.

9. Pursuant to A.R.S. § 31-201.01(F), any and all causes of action which may arise out of tort caused by the director, prison officers, or employees of ADOC, run only against the State.

**JURISDICTION AND VENUE**

10. The amount in controversy exceeds the jurisdictional limitations of this Court.

11. This case is brought against the State of Arizona; therefore, venue is proper in this Court under A.R.S. § 12-401.

12. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely

notice of claim pursuant to A.R.S. § 12-821.01 upon Defendant State of Arizona on or about January 7, 2021. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

## DEMAND FOR JURY TRIAL

13. Plaintiff demands a jury trial as to all triable issues.

## RULE 26.2 TIER DESIGNATION

14. Pursuant to Rule 26.2 of the Arizona Rules of Civil Procedure, Plaintiff designates this case for Tier 3 discovery.

## GENERAL ALLEGATIONS

**Defendant McClelland had a longstanding history of sexually harassing his female coworkers and subordinates, which was common knowledge among command staff and supervisors at ASPC – Florence Central Unit.**

15. Defendant Jason McClelland was hired by ADOC as a correctional officer in approximately 2014 and worked primarily at the ASPC – Florence Central Unit in Florence, Arizona.

16. On information and belief, Defendant McClelland began making inappropriate sexual advances toward his female coworkers, including correctional officers as well as medical staff who worked for the prison's healthcare contractor, shortly after he began his employment with ADOC.

17. In approximately August 2014, Defendant McClelland made inappropriate sexual advances toward a female correctional officer, telling her he was going to kiss her.

18. Defendant McClelland cornered the correctional officer while she was posted in a secluded area and stated, "I'm here for my kiss."

19. Despite the officer's attempts to rebuff Defendant McClelland, he kept coming closer and insisting on kissing her, but another correctional officer entered the area and interrupted Defendant McClelland before he made contact with her.

20. On information and belief, ADOC did not reprimand Defendant McClelland or take any action against him following this incident.

21. Defendant McClelland was eventually promoted to the rank of sergeant and

became a corrections supervisor.

22. Defendant McClelland was also a member of the Tactical Support Unit (TSU) which is an elite group of correctional officers, at times thought of as a "S.W.A.T. team" for prisons. This specialized unit is called out to respond to crises, and its members are specially trained and generally held in high regard by their co-workers and prison staff.

23. ADOC provided the TSU members with access to restricted areas within the prison worksite, including a designated "TSU Building," also known as "the Dorm," and an adjacent structure known as the "Commander's Room."

24. As a sergeant and member of the TSU, Defendant McClelland was given access to the TSU areas, including the TSU Building and the Commander's Room.

25. Defendant McClelland sexually assaulted at least two of his victims, including Plaintiff, in the restricted TSU areas.

26. On information and belief, it was well known among prison staff, including other sergeants and supervisory personnel, that Defendant McClelland was overly flirtatious and inappropriate in the workplace and that he had sexual relationships with several staff members over the years.

27. It was also well known among staff that Defendant McClelland would prey on young female corrections and medical staff members who he perceived to be vulnerable and easy to coerce and that he would not accept "no" for an answer.

28. On information and belief, several corrections and medical staff members resigned or sought transfers to other prisons after being victimized by Defendant McClelland in the workplace.

29. However, Defendant McClelland was popular, well liked, and respected among the command staff at ASPC – Florence Central Unit, and the "boys will be boys" culture that existed within the prison allowed his sexual proclivities to go unchecked.

30. On information and belief, Defendant McClelland would use his authority and his position as a sergeant and supervisor to ensure he knew where and when his victims would be working and would ensure that he was assigned to work near them.

31. On information and belief, Defendant McClelland would determine whether his victims would be working alone or stationed in secluded areas of the prison, and he would seize the opportunity to corner them when no one else was around.

32. Defendant McClelland also used ADOC's computer system to obtain his victims' personal phone numbers, which he would use to call and text them without their consent.

33. On information and belief, Defendant McClelland's victims did not always report his misconduct through formal channels at ASPC – Florence Central Unit because the prison culture deterred them from doing so. Because Defendant McClelland was a well-liked and respected sergeant and TSU member, his victims feared that they would suffer retaliation or would not be believed if they reported him.

34. On information and belief, Defendant McClelland's victims generally had no confidence in ADOC's "informal resolution" process and believed it to be futile because it allowed supervisors to manipulate the outcome in their favor.

35. ADOC's "informal resolution" policy allowed supervisors to dispose of paperwork or complaints written about them or alter the documents to benefit themselves. When a situation such as harassment was reported, the "informal resolution" process allowed supervisors to manipulate the outcome to their liking and consider the matter resolved while not documenting (or inaccurately documenting) the matter in order to claim probable deniability later.

36. Nevertheless, Defendant McClelland's sexual misconduct was common knowledge among prison staff and supervisors, in part because he often boasted about his conquests.

37. In approximately January and September 2019, Defendant McClelland sexually assaulted a female corrections officer at ASPC – Florence Central Unit.

38. Shortly after these assaults occurred, Defendant McClelland spread rumors about the corrections officer around the prison complex, suggesting that she had willingly "hooked up" with him and was sexually promiscuous, presumably in an attempt to discredit

her and protect himself against any allegations or investigations into his behavior.

39. In approximately December 2019 or January 2020, Defendant McClelland began to make sexual advances toward another female corrections officer.

40. Defendant McClelland sexually assaulted this corrections officer at ASPC – Florence Central Unit on at least three occasions in approximately January and February 2020.

41. Defendant McClelland also spread rumors about this corrections officer and falsely told other prison staff that she and McClelland were in a consensual relationship.

42. On information and belief, prison supervisors and command staff were aware of Defendant McClelland's inappropriate sexual behavior and abuse of these correctional officers.

43. On information and belief, prison supervisors and command staff did not impose discipline, training, or any corrective action against Defendant McClelland in response to these incidents.

**Defendant McClelland used his rank and authority to sexually assault Plaintiff at ASPC – Florence Central Unit.**

44. Plaintiff, at all relevant times, worked as a nurse at ASPC – Florence Central Unit and was employed by the prison's healthcare contractor.

45. In approximately mid-2019, Defendant McClelland became flirtatious with Plaintiff.

46. Defendant McClelland's sexual advances toward Plaintiff escalated in intensity over several months. He was pushy, aggressive, and often made Plaintiff feel uncomfortable.

47. Defendant McClelland told prison staff that he was in love with Plaintiff. He would often find Plaintiff during her shifts, follow her around, and come on to her.

48. Plaintiff would often ask a co-worker to walk her to her car after her shifts because Defendant McClelland would frequently wait for her by her car or near the front gate of Central Unit.

49. The sexual harassment became so intense that Plaintiff tried to change her shifts from nights to days to try to avoid Defendant McClelland.

50. On July 15, 2020, Plaintiff was working a night shift at ASPC – Florence Complex Kasson Unit due to COVID-19.

51. At approximately 11:30 p.m., Plaintiff left Kasson Unit and went to ASPC – Florence Central Unit, where Defendant McClelland approached her near the front gate.

52. Defendant McClelland asked Plaintiff to walk with him to his car, and Plaintiff acquiesced.

53. On the way to his car, Defendant McClelland asked Plaintiff if she had ever been inside the TSU Building. When Plaintiff told him she had not, he took her to the TSU Building, unlocked the door with his key, and had her enter the building in front of him.

54. Plaintiff began looking at photos of the TSU members which were hanging on a wall.

55. Defendant McClelland leaned on a table and began to act strangely, which made Plaintiff uncomfortable.

56. Plaintiff showed Defendant McClelland a video of her children to try to distract him and diffuse the situation.

57. Defendant McClelland then grabbed Plaintiff by her arm and waist, pulled her to him, and began to kiss her.

58. Plaintiff told Defendant McClelland to stop and that "this isn't going to happen."

59. Plaintiff tried to pull away, but she could not escape Defendant McClelland, who was 6'3" and weighed 225 pounds.

60. With his arms around her waist, Defendant McClelland pushed Plaintiff across the room and against a wall.

61. Defendant McClelland held Plaintiff against the wall, kissed her neck repeatedly, and tried to remove her shirt and pants.

62. Plaintiff tried to evade Defendant McClelland, but he continued to kiss her and

1 tried to remove her clothing.

2 63. Defendant McClelland then used his hand to rub Plaintiff's genitals over her clothing.

4 64. Plaintiff repeatedly told Defendant McClelland "No" and that she wanted to leave and go home.

6 65. Plaintiff feared that Defendant McClelland was going to rape her.

7 66. Finally, Plaintiff was able to escape. She left the TSU Building and went to the Central Unit, where she told her supervisor, Stephanie Oplinger, R.N., what had happened.

10 67. While telling RN Oplinger about the assault, Plaintiff was sobbing and visibly distressed.

12 68. The ADOC Criminal Investigations Unit ("CIU") began investigating Defendant McClelland the next morning.

14 69. The CIU investigator, Daniel Root, interviewed Plaintiff. During the interview, Plaintiff was visibly upset, shaking, crying, and had difficulty speaking at times due to her profound level of distress.

17 70. Within days, several other female corrections and medical employees came forward and reported similar experiences of being harassed or assaulted by Defendant McClelland.

20 71. On July 18, 2020, Plaintiff reported the assault to the Florence Police Department.

22 72. On July 22, 2020, Investigator Root interviewed Plaintiff a second time. Investigator King and RN Supervisor Michelle Diez were also present.

24 73. During the second interview, Plaintiff again became visibly distressed and upset and was crying and shaking while she described the attack.

26 74. Also on July 22, 2020, Plaintiff sought and obtained an Injunction Against Harassment against Defendant McClelland in Pinal County Superior Court, Case No. S1100P02000350.

75. Plaintiff took a few days off of work but eventually returned to her position.

76. Prison management allowed Defendant McClelland to continue working at ASPC – Florence Central Unit without restrictions while the investigations into his conduct were ongoing.

77. While the CIU investigation against him was underway, Defendant McClelland told Lieutenant Garrett that if "these bitches" ruined his life, he would kill them.

78. On information and belief, neither Lieutenant Garrett nor any other supervisor admonished Defendant McClelland for making the threat or immediately reported and documented the threat.

79. No one informed Plaintiff that she had been the subject of a death threat, and she did not learn about the threat for several months.

80. ADOC ultimately decided to transfer Defendant McClelland to another complex, ASPC – Eyman, where he was to remain in a supervisory position without restrictions.

81. On August 6, 2020, Defendant McClelland was arrested.

82. Defendant McClelland submitted his voluntary resignation to ADOC on August 11, 2020.

83. On August 12, 2020, Defendant McClelland was indicted on nine charges for the sexual assault, sexual abuse, and kidnapping of Plaintiff and a female corrections officer.

84. On November 13, 2020, the indictment against Defendant McClelland was amended to add six additional charges for the assault, sexual assault, and kidnapping of two more victims, both of whom worked at the prison.

85. As a result of the assault, sexual misconduct, and harassment to which she was subjected, Plaintiff suffered physical, mental, and emotional harm, severe emotional distress, humiliation, grief, and fear, and she has incurred medical expenses, lost wages, and other economic losses.

///

# COUNT ONE

### Assault and Battery
### (Defendant State of Arizona)

86. The foregoing paragraphs are incorporated as if fully set forth herein.

87. Defendant McClelland intentionally caused harmful or offensive contact to Plaintiff when he sexually abused her in the TSU Building at ASPC – Florence Central Unit.

88. Plaintiff reasonably experienced an imminent apprehension of harm.

89. The assault and battery were not justified.

90. At all relevant times, Defendant McClelland was acting in the course and scope of his employment for Defendant State of Arizona because:

   a. The assault and battery were incidental to Defendant McClelland's position and authority as an ADOC corrections sergeant because they occurred at ASPC – Florence Central Unit during work hours and in a restricted area that McClelland had access to by virtue of his position;

   b. Defendant State of Arizona knew or should have known of Defendant McClelland's history of sexual misconduct at ASPC – Florence Central Unit; and

   c. Defendant State of Arizona should have anticipated that Defendant McClelland would continue to engage in sexual misconduct at ASPC – Florence Central Unit.

91. Defendant State of Arizona ratified Defendant McClelland's assault and battery of Plaintiff because Defendant McClelland acted under his authority as a corrections sergeant and TSU member when he committed the assault and battery, Defendant State of Arizona had knowledge that the assault and battery had occurred, and Defendant State of Arizona allowed Defendant McClelland to remain employed as a corrections sergeant after learning of the assault and battery.

92. Plaintiff is entitled to damages.

/ / /

## COUNT TWO

### False Imprisonment
### (Defendant State of Arizona)

93. The foregoing paragraphs are incorporated as if fully set forth herein.

94. Defendant McClelland acted with intent to confine Plaintiff within fixed boundaries when he sexually abused her in the TSU Building at ASPC – Florence Central Unit.

95. Defendant McClelland's actions resulted in Plaintiff's confinement.

96. Plaintiff was conscious of the confinement and was harmed by it.

97. At all relevant times, Defendant McClelland was acting in the course and scope of his employment for Defendant State of Arizona because:

   a. The false imprisonment was incidental to Defendant McClelland's position and authority as an ADOC corrections sergeant because it occurred at ASPC – Florence Central Unit during work hours and in a restricted area that McClelland had access to by virtue of his position;

   b. Defendant State of Arizona knew or should have known of Defendant McClelland's history of sexual misconduct at ASPC – Florence Central Unit; and

   c. Defendant State of Arizona should have anticipated that Defendant McClelland would continue to engage in sexual misconduct at ASPC – Florence Central Unit.

98. Defendant State of Arizona ratified Defendant McClelland's false imprisonment of Plaintiff because Defendant McClelland acted under his authority as a corrections sergeant and TSU member when he committed the false imprisonment, Defendant State of Arizona had knowledge that the false imprisonment had occurred, and Defendant State of Arizona allowed Defendant McClelland to remain employed as a corrections sergeant after learning of the false imprisonment.

99. Plaintiff is entitled to damages.

## COUNT THREE

### Intentional Infliction of Emotional Distress
### (Defendant State of Arizona)

100. The foregoing paragraphs are incorporated as if fully set forth herein.

101. Defendant McClelland engaged in conduct that was extreme and outrageous when he sexually abused Plaintiff in the TSU Building at ASPC – Florence Central Unit.

102. Defendant McClelland either intended to cause Plaintiff emotional distress or recklessly disregarded the near certainty that distress would result from his conduct.

103. Defendant McClelland's conduct caused Plaintiff to suffer severe emotional distress, including anxiety, depression, post-traumatic stress, humiliation, grief, and fear.

104. At all relevant times, Defendant McClelland was acting in the course and scope of his employment for Defendant State of Arizona because:

   a. His extreme and outrageous conduct was incidental to Defendant McClelland's position and authority as an ADOC corrections sergeant because it occurred at ASPC – Florence Central Unit during work hours and in a restricted area that McClelland had access to by virtue of his position;

   b. Defendant State of Arizona knew or should have known of Defendant McClelland's history of sexual misconduct at ASPC – Florence Central Unit; and

   c. Defendant State of Arizona should have anticipated that Defendant McClelland would continue to engage in sexual misconduct at ASPC – Florence Central Unit.

105. Defendant State of Arizona ratified Defendant McClelland's extreme and outrageous conduct because Defendant McClelland acted under his authority as a corrections sergeant and TSU member when he committed the misconduct, Defendant State of Arizona had knowledge that the misconduct had occurred, and Defendant State of Arizona allowed Defendant McClelland to remain employed as a corrections sergeant after learning of the misconduct.

106. Plaintiff is entitled to damages.

## COUNT FOUR

### Negligence / Gross Negligence
### (Defendant State of Arizona)

107. The foregoing paragraphs are incorporated as if fully set forth herein.

108. Defendant State of Arizona owes a duty of care to persons with whom its employees come into contact.

109. Defendant State of Arizona breached this duty by failing to adequately supervise corrections staff, including Defendant Jason McClelland, at ASPC – Florence Central Unit.

110. Defendant State of Arizona breached this duty by failing to adequately train corrections officers, including Defendant Jason McClelland, with respect to sexual harassment and abuse in the workplace.

111. Defendant State of Arizona breached this duty by retaining Defendant Jason McClelland as its employee when it knew or should have known that he had sexually abused and victimized female staff members at ASPC – Florence Central Unit.

112. Defendant State of Arizona breached this duty by failing to take corrective action or discipline Defendant Jason McClelland when it knew or should have known that he had sexually abused and victimized female staff members at ASPC – Florence Central Unit.

113. Defendant State of Arizona breached this duty by failing to adopt adequate and reasonable policies to prevent and correct sexual abuse and harassment at ASPC – Florence Central Unit.

114. Defendant State of Arizona knew or should have known that Defendant Jason McClelland's conduct created an unreasonable risk of bodily harm to female staff members at ASPC – Florence Central Unit and that there was a high probability that substantial harm would occur.

115. As a direct result of Defendant State of Arizona's negligent, grossly negligent, willful, wanton, and/or reckless conduct, Plaintiff suffered physical, mental, and emotional

harm, severe emotional distress, humiliation, grief, and fear, and she has incurred medical expenses, lost wages, and other economic losses.

## COUNT FIVE

### 42 U.S.C. § 1983 – Violation of Equal Protection
### (Defendant Jason McClelland)

116. The foregoing paragraphs are incorporated as if fully set forth herein.

117. Sexual harassment is a form of sex discrimination prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

118. Defendant McClelland violated Plaintiff's right to equal protection when he sexually harassed her and made unwanted sexual advances toward her at ASPC – Florence Central Unit from approximately mid-2019 through July 2020.

119. Defendant McClelland violated Plaintiff's right to equal protection when he sexually abused and assaulted her in the TSU Building at ASPC – Florence on July 15, 2020.

120. Defendant McClelland was acting under the color of state law when he sexually harassed, abused, and assaulted Plaintiff because his actions were undertaken while exercising his responsibilities as a corrections sergeant and member of the TSU Unit at ASPC – Florence Central Unit.

121. Defendant McClelland was also acting under the color of state law because he abused the authority and position given to him by the State when he committed the assault in a restricted area of the prison known as the TSU Building, which was not accessible to lower ranking prison employees.

122. As a result of Defendant McClelland's violation of equal protection under the Fourteenth Amendment, Plaintiff suffered physical, mental, and emotional harm. Plaintiff has experienced severe emotional distress, humiliation, grief, and fear, and has incurred medical expenses, lost wages, and other economic losses.

123. Because Defendant McClelland's actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

///

## COUNT SIX
## 42 U.S.C. § 1983 – Ratification
### (Defendants Van Winkle, Ryan, and Shinn)

1. The foregoing paragraphs are incorporated as if fully set forth herein.

2. Defendants Van Winkle, Ryan, and Shinn were final policymakers for ASPC – Florence Central Unit.

3. At all times alleged herein, Defendants Van Winkle, Ryan, and Shinn knew of the pervasive culture of sexual harassment within ASPC – Florence Central Unit and customs that deterred victims of harassment from reporting incidents through formal channels.

4. At all times alleged herein, Defendants Van Winkle, Ryan, and Shinn knew that Defendant McClelland had a propensity for inappropriate sexual behavior toward female prison employees.

5. Defendants Van Winkle, Ryan, and Shinn knew that it was standard operating procedure for supervisors and command staff at ASPC – Florence Central Unit to turn a blind eye and decline to take action in response to sexual harassment, which in turn created an atmosphere where employees, like Defendant McClelland, believed they could sexually harass others without consequences.

6. Defendants Van Winkle, Ryan, and Shinn knew that prison supervisors were able to manipulate the informal resolution process to conceal or modify complaints made by other employees, and Defendants knew that victimized employees were reluctant to use this process to report sexual harassment out of fear of retaliation or that they would not be believed.

7. Defendants Van Winkle, Ryan, and Shinn knew that the environment within the prison was such that employees who were subject to sexual harassment felt they would be retaliated against or would not be believed if they formally reported the harassment.

8. Thus, even though Defendant McClelland's inappropriate sexual misconduct was common knowledge at the prison, it was permitted to go uncorrected and unaddressed prior to July 2020.

9. Defendants Van Winkle, Ryan, and Shinn acquiesced in and ratified these widespread customs and practices to such an extent that they became *de facto* policies at ASPC – Florence Central Unit.

10. Defendants Van Winkle, Ryan, and Shinn further ratified these policies, customs, and practices by, among other things, failing to prevent and correct sexual harassment in the workplace and failing to terminate Defendant McClelland's employment when several victims, including Plaintiff, reported his criminal behavior.

11. Defendants Van Winkle, Ryan, and Shinn knew that these policies, customs, and practices placed prison corrections and medical employees at a risk for harm.

12. The policies, customs, and practices that Defendants Van Winkle, Ryan, and Shinn ratified directly caused the violation of Plaintiff's right to equal protection under the Fourteenth Amendment, and as a result, Plaintiff suffered physical, mental, and emotional harm, severe emotional distress, humiliation, grief, and fear, and has incurred medical expenses, lost wages, and other economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For special and general compensatory damages, including for past and future medical expenses, lost wages, emotional distress, and loss of enjoyment of life;

B. For punitive damages against Defendant McClelland;

C. For attorneys' fees and costs under 42 U.S.C. § 1988 to the extent permitted by law;

D. For pre- and post-judgment interest to the extent permitted by law;

E. For fees and expenses, including taxable costs, to the extent permitted by law; and,

F. For such other relief as the Court deems just and proper.

///

RESPECTFULLY SUBMITTED: April 26, 2021.

          **ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Anne E. Findling
     Anne E. Findling
     Lauren E. Channell
     301 E. Bethany Home, #B-100
     Phoenix, AZ   85012
     *Attorneys for Plaintiff*