**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcella Fox, | No. CV-21-01089-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff's and the State of Arizona's Joint Statement of Discovery Dispute (Doc. 74) and supplemental briefing (Docs. 79, 86), Defendant McClelland's Motion for Mental Examination of Plaintiff (Doc. 75), Brittany Fountain and Kysha Slocumb's Objections and Motion to Quash Deposition Subpoenas (Doc. 88), Plaintiff's Motion to Quash Subpoena Duces Tecum (Doc. 90), and the State's Motion to Strike Plaintiff's Reply (Doc. 112). The Court now rules.

## I.    FACTUAL BACKGROUND

Plaintiff Marcella Fox filed this action asserting claims for assault, battery, false imprisonment, intentional infliction of emotional distress, negligence, and violation of equal protection under 42 U.S.C. § 1983, based on allegations that Defendant Jason McClelland sexually assaulted her while both were working for the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADC"). (Doc. 33.) Plaintiff alleges that Defendant McClelland habitually made sexual advances toward his female coworkers in front of others, but ADC took no action against him. (*Id.*, ¶¶ 17, 18, 22.) For example,

Plaintiff alleges that Defendant McClelland sexually assaulted two female correctional officers and sexually harassed a nurse on multiple occasions throughout 2019 and 2020. (*Id.*, ¶¶ 40-44, 47, 48.) Plaintiff further alleges that Defendant McClelland sexually assaulted her at work on July 15, 2020. (*Id.*, ¶¶ 64, 71-78.) Plaintiff alleges that she escaped from Defendant McClelland's control and immediately told her supervisor, Stephanie Oplinger, about the incident. (*Id.*, ¶ 80.) Plaintiff further alleges that Defendant was arrested and indicted on several sexual assault, sexual abuse, and kidnapping charges related to four victims, including Plaintiff. (*Id.*, ¶¶ 97, 104-05.) The charges against Defendant McClelland have been dismissed. (*See* Doc. 79-1 at 36.)

Brittany Fountain and Kysha Slocumb, two of Defendant McClelland's other alleged victims, also filed civil lawsuits against him. Both cases have settled. During the pendency of those lawsuits, Plaintiff, Ms. Fountain, and Ms. Slocumb were all represented by the same counsel, Anne Findling. Ms. Fountain and Ms. Slocumb are now represented by Joy Bertrand.

## II.     DISCOVERY OF PLAINTIFF'S TEXT MESSAGES

### A.     Background

Fact discovery in this case closes on January 6, 2023. (Doc. 44.) The parties filed a Joint Statement of Discovery Dispute regarding Plaintiff's responses to the State's Requests for Production ("RFP"). (Doc. 74.) The Court ordered supplemental briefing (Doc. 78), which the State and Plaintiff filed (Docs. 79, 86).

Pursuant to Federal Rule of Civil Procedure 34, the State requested all of Plaintiff's communications with Ms. Fountain (RFP No. 1), Ms. Slocumb (RFP No. 2), and Defendant McClelland (RFP No. 4). The State also requested Plaintiff's communications with Ms. Oplinger (RFP No. 5), and Jessica Todd (RFP No. 6) from July 15 to December 31, 2020. (*See* Doc. 74; *see also* Doc. 79-1 at 3.) Plaintiff initially responded without producing any text messages, asserting various objections and privileges. Plaintiff then supplemented her original responses to include redacted messages from Ms. Fountain's cell phone and a privilege log previously produced in Ms. Fountain's lawsuit. (*See* Doc. 79-1 at 6-9.)

In the parties' Joint Statement of Discovery Dispute, the State asserts that immediately after the alleged sexual assault, Plaintiff texted with Ms. Oplinger, Ms. Fountain, Ms. Todd, and Ms. Slocumb about Defendant McClelland. (Doc. 74 at 1-2.) The State also asserts that Plaintiff's prior redacted production of messages is inadequate. (*Id.* at 2.) Plaintiff admitted to previously dating Defendant McClelland and exchanging text messages with him throughout that relationship. (*Id.* at 1.) Plaintiff generally asserts, as she previously testified at her deposition, "the earliest text messages backed up to her iCloud are dated November 18, 2020." (Doc. 74 at 2.) Plaintiff also asserts that the text messages sought are irrelevant, private, and not proportional to the needs of the case. (*Id.* at 3.)

The parties agree that the scope of the requested communications is limited to text messages for this dispute. Plaintiff has not produced any text messages from her own cell phone as of the date of this order. Rule 34 requires parties to produce any relevant and responsive documents in their possession, custody, or control, including text messages, in response to another party's discovery requests. Fed. R. Civ. P. 34.

## B.     Legal Standard

Under Federal Rule of Civil Procedure 26 parties may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). District courts have broad discretion in controlling discovery, but discovery is not boundless. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Discovery must be limited if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Rule 26(b)(1) lists the following factors for courts to consider when evaluating proportionality: the importance of the issues at stake in the action; the amount in controversy; the parties' relative access to the relevant information; the parties'

resources; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

**C.     Analysis**

**1.     Motion to Compel Text Messages**

**a.     Loss of Pre-November 2020 Text Messages**

Plaintiff testified at her deposition that she no longer has access to any text messages prior to November 18, 2020 because she purchased a new phone. (Doc. 86-1 at 5.) Plaintiff asserts that she has attempted to access the prior messages through her iCloud but there are no archived messages prior to November 18, 2020. (*Id.*) The State argues that "Plaintiff either failed to preserve the messages or failed to conduct a competent search for them." (Doc. 79 at 1.)

The State has raised legitimate reasons to question whether Plaintiff is withholding responsive communications. Plaintiff has not supplied an affidavit or sworn testimony that she took any steps to recover her messages other than merely logging in to her iCloud account. Certainly, Plaintiff could have at least contacted Apple or her wireless carrier in an attempt to retrieve the messages. Additionally, the relevant time period for the RFPs extends past November 18, 2020. It is not clear to the Court why Plaintiff could not search for and produce any responsive messages in her possession dated November 18, 2020 or later. The Court is not satisfied that Plaintiff's representations adequately demonstrate that there was a reasonable search for responsive messages.

The Court finds that Plaintiff has not done enough to establish that her text messages prior to November 18, 2020 are irretrievably lost by inadvertent action. Thus, Plaintiff shall be required to conduct an additional search for the messages and supply a sworn declaration describing her additional search efforts. If Plaintiff can retrieve responsive text messages after additional efforts, Plaintiff shall produce those messages within 21 days of this Order. Such an attestation after limited additional searching would give the Court and the State assurance that Plaintiff has complied with her duty under Rule 26 without unduly burdening her. *See Federal Trade Commission v. Noland*, CV-20-0047-DWL, 2021 WL

2187021, at *3 (D. Ariz. May 28, 2021).

### b.      Brittany Fountain and Kysha Slocumb

Defendants' RFP Nos. 1 and 2 requested all of Plaintiff's communications with Brittany Fountain and Kysha Slocumb. (Doc. 79-1 at 3.) In response, Plaintiff invoked "the attorney-client privilege, the co-client (or joint client privilege), the common interest privilege, and/or the joint defense privilege," and protection under the Arizona Constitution Victim's Bill of Rights ("VBR"). (Doc. 79-1 at 6.) Plaintiff also objected to the requests as overly broad, irrelevant, and intended to embarrass or harass Plaintiff. (*Id.* at 7.) Plaintiff then supplemented her original responses to include redacted text messages from Ms. Fountain's cell phone and furnished a privilege log invoking the VBR, Federal Rule of Civil Procedure 26(b)(1) and Federal Rules of Evidence 402 and 403. (*See* Doc. 79-1 at 12-14, 19-32.)

The State argues that because the criminal lawsuit against Defendant McClelland has been dismissed with prejudice, the VBR is no longer applicable. According to the State, Plaintiff should be required to produce additional, responsive messages between Ms. Fountain, Ms. Slocumb, and herself, including those previously withheld under the VBR. (Doc. 79 at 3.) The State notes that after the criminal lawsuit was dismissed, both Plaintiff and Defendant McClelland submitted to depositions that were previously unavailable under the VBR. Notwithstanding her agreement to sit for deposition, Plaintiff reiterates the existence and applicability of the VBR to the State's discovery requests. (Doc. 86 at 3.)

Crime victims' rights are protected by the Arizona Constitution through the VBR, which provides, in relevant part:

> (A)      To preserve and protect victims' rights to justice and due process, a victim of crime has a right:
> 1.      To be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process.
> . . .
> 5.      To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. II, § 2.1. The Arizona Court of Appeals applied the VBR to prevent a criminal defendant from taking their alleged victim's deposition in a related civil case prior to the criminal trial. *State v. Lee*, 245 P.3d 234, 238-39 (Az. Ct. App. 2011). The *Lee* court noted that "[t]he purpose underlying a victim's right to refuse a pretrial deposition is to protect the victim's privacy and minimize contact with the defendant prior to trial." *Id.* at 239. But the court expressly "decline[d] to address [whether] a victim's right to refuse [discovery] could extend beyond the conclusion of the criminal trial." *Id.* at 238 n.7. No other Arizona appellate court has addressed this issue to date. Other courts in this District have relied on the reasoning in *Lee* to hold that victims' rights under the VBR expire at the conclusion of the state court criminal proceedings and do not carry over into subsequent federal habeas litigation. *Forde v. Shinn*, No. CV-21-00098-TUC-SHR, 2021 WL 2555430, at *3 (D. Ariz. Jun. 22, 2021); *Miller v. Shinn*, No. CV-21-00992-PHX-ROS, 2021 WL 4503461, at *3 (D. Ariz. Oct. 1, 2021); *Burns v. Shinn*, No. CV-21-1173-PHX-SPL, 2021 WL 5280601, at *2–4 (D. Ariz. Nov. 12, 2021).

The Court need not reach this issue of first impression here because, by its plain text, the VBR is limited to a victim's right to refuse discovery requested "by the defendant, the defendant's attorney, or other person acting on behalf of the defendant."[1] Ariz. Const. art. II, § 2.1; *see also Winterbottom v. Ronan*, 258 P.2d 182, 184 (Az. Ct. App. 2011). The discovery requests at issue were propounded by the State of Arizona, not by Defendant McClelland. Although the State and Defendant McClelland are both defendants in this action based on the same underlying events, it is not clear to the Court that their interests are aligned. The First Amended Complaint ("FAC") asserts separate counts against each party. (*See* Doc. 33.) The State and Defendant McClelland also filed separate answers to the FAC and served separate discovery requests on Plaintiff. The State is represented by the Arizona Attorney General's Office and Defendant McClelland has retained his own counsel. In the absence of specific evidence that the State is acting on behalf of Defendant McClelland in propounding its discovery requests, the Court cannot say that the State is

---

[1] Moreover, the parties have not fully briefed their positions on the application of the VBR to the State's pending discovery requests.

representing Defendant McClelland's interests such that the VBR applies.[2]

Additionally, Plaintiff concedes that her text messages with Ms. Fountain and Ms. Slocumb are relevant and "include[] extensive information the women shared about their mental health and psychological distress." (Doc. 86 at 3.) Plaintiff's FAC asserts a claim for intentional infliction of emotional distress against the State and seeks emotional distress damages. (Doc. 33 at 14, 18.) After putting her emotional status at issue, Plaintiff cannot now seek to exclude this evidence as irrelevant or disproportional to the needs of the case. The Court does find that the State's request is disproportional as to time frame and scope, however. It would be unduly burdensome and intrusive to require Plaintiff to produce all messages with Ms. Fountain and Ms. Slocumb, regardless of the content and time of receipt. Non-privileged messages relating to the events underlying this action, however, are relevant to Plaintiff's claims against Defendant and must be produced. The Court thus limits Plaintiff's obligation under RFP Nos. 1 and 2 to non-privileged communications in Plaintiff's possession on or after July 15, 2020 pertaining to the events underlying this action. The Court finds that by limiting the scope of the messages to the events underlying Plaintiff's own asserted claims, the appropriate balance is achieved between Defendant's need for the information and Plaintiff's right to be protected from undue harassment.

Thus, the Court orders Plaintiff to produce any additional, responsive text messages with Ms. Fountain and Ms. Slocumb in her possession, unless they are subject to another relevant privilege. If Plaintiff claims privilege over any of those messages, Plaintiff must provide an updated privilege log setting forth specifically which privilege she seeks to invoke and how that privilege precludes disclosure.[3] *See Rodriguez v. Seabreeze Jetlev LLC*, --- F.Supp.3d ---, 2022 WL 3327925 (N.D. Cal. Aug. 11, 2022) ("If a party withholds

---

[2] Because the Court denies application of the VBR on the ground that the party propounding the discovery is not the criminal defendant, his attorney, or someone representing his interests, the Court need not consider whether the VBR applies beyond the end of the related criminal proceeding. *See Winterbottom*, 258 P.3d at 184 n.2.

[3] The Court notes that although Plaintiff's prior responses to Defendants' RFPs invoke "the attorney-client privilege, the co-client (or joint client privilege), the common interest privilege, and/or the joint defense privilege," none of those privileges were asserted in the attached privilege log or addressed in the parties' briefing. (*Compare* Doc. 79-1 at 6-7 *with id.* at 19-32.)

material as privileged . . . it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified.") (internal quotations omitted). Plaintiff is not required to reproduce texts from her phone that would be duplicative of what has already been produced from Ms. Fountain's phone. Nor is Plaintiff required to produce messages that would contain information pertaining to Ms. Fountain's or Ms. Slocumb's confidential settlement agreements with Defendant McClelland.

### c.  Defendant McClelland

The State's RFP No. 4 requested all of Plaintiff's communications to and from Defendant McClelland. (Doc. 79-1 at 3.) In response, Plaintiff objected to the timeframe as overly broad and stated that "she may have exchanged text messages with Jason McClelland in 2019 but no longer has access to those text messages." (Doc. 79-1 at 8.) In her supplemental response, Plaintiff further stated "Plaintiff does not believe that she ever deleted these text messages" but that they were instead "lost at some point when she got a new cell phone" because her messages did not transfer to her new phone. (Doc. 79-1 at 14.) The State argues that Plaintiff's messages with Defendant McClelland are "extremely important" because they may contain information bearing on the relationship between the parties. (Doc. 79 at 4.) In response, Plaintiff asserts that she has made a reasonable inquiry into whether responsive documents exist and was unable to locate any. (Doc. 86 at 2.)

"A court may deny a motion to compel when the information sought is almost certainly nonexistent or the object of pure speculation." *In re Pork Antitrust Litigation*, No. 18-cv-1776, 2022 WL 972401 at *9 (D. Minn. Mar. 31, 2022). "A court will do so when evidence shows that the responding party has searched for the information but cannot find it or disclaims its existence after the search, and the movant shows no evidence to suggest the information exists." *Id.* Plaintiff asserts that she changed her phone number and purchased a new phone after Defendant McClelland threatened her. (Doc. 74 at 2.) The State does not refute this or provide any evidence that Plaintiff and Defendant McClelland continued to correspond after she changed her phone number. The Court finds that Plaintiff

conducted a reasonable search for responsive text messages from the time she changed her phone number. Based on Plaintiff's assertion that she stopped communicating with Defendant McClelland because he threatened her, responsive texts from that time period are "almost certainly nonexistent." Thus, the Court denies the State's motion to compel Plaintiff to produce messages with Defendant McClelland after she changed her phone number.

As discussed above in Part II.C.1.a *supra*, Plaintiff has not shown that a reasonable search was conducted for messages prior to November 18, 2020. Plaintiff shall conduct an additional search for those messages, including messages with Defendant McClelland prior to November 18, 2020, and provide an attestation of her search as discussed *supra*.

### d.    Stephanie Oplinger

The State's RFP No. 5 requested "all of Plaintiff's communications to and from Stephanie Oplinger from July 15, 2020 to December 31, 2020." (Doc. 79-1 at 3.) In response, Plaintiff objected to the request as irrelevant, not proportional to the needs of the case, and not likely to lead to the discovery of admissible evidence. (Doc. 79-1 at 8.) In her supplemental response, Plaintiff further stated:

> In addition, Stephanie Oplinger's statement to CIU states that on July 15, 2020, Plaintiff texted her and asked her to bring Plaintiff's personal items to the front gate as she was leaving for the night. Oplinger's statement goes on to describe what Plaintiff told her in person about the assault by McClelland. See STATE-0384. Thus, information responsive to this request is already within the State's possession.

(Doc. 79-1 at 15.) The State argues that Plaintiff's supplemental response concedes that relevant text messages with Ms. Oplinger relating to the investigation exist, but Plaintiff has refused to produce them. (Doc. 79 at 5.)

The State has a reasonable basis to believe that messages responsive to RFP No. 5 exist that have not been produced. Plaintiff's response states only that "information responsive to this request is already within the State's possession," not that there are no additional responsive communications in Plaintiff's possession. The Court does agree with

Plaintiff, however, that Defendants' request is not proportional to the needs of the case and it would be unduly burdensome and intrusive to require Plaintiff to produce all messages with Ms. Oplinger, regardless of the content. Messages relating to the events underlying this action are relevant to Plaintiff's claims against Defendants and must be produced. The Court thus limits Plaintiff's obligation under RFP No. 5 to non-privileged communications within Plaintiff's possession pertaining to the events underlying this action.

### e.    Jessica Todd

The State's RFP No. 6 requested "all of Plaintiff's communications to and from Jessica Todd from July 15, 2020 to December 31, 2020." (Doc. 79-1 at 3.) In response, Plaintiff objected to the request as irrelevant, not proportional to the needs of the case, and not likely to lead to the discovery of admissible evidence. (Doc. 79-1 at 8.)

In her supplemental response, Plaintiff further stated:

> In addition, the CIU investigative report states that Jessica Todd was present for Plaintiff's interview with Investigator Root on July 16, 2020, at Plaintiff's request. The report describes Plaintiff's statement in detail. See STATE-0402. Thus, the information responsive to this request is already within the State's possession.

(Doc. 79-1 at 15.) The State argues that Plaintiff's texts with Ms. Todd "likely contain information" about Plaintiff, Defendant McClelland, and the investigation because Ms. Todd and Plaintiff worked together and interacted during the investigation. (Doc. 79 at 5.) Because Ms. Todd was present for Plaintiff's interview with CIU regarding the alleged assault, the State's position that there may be relevant messages between Ms. Todd and Plaintiff leading to the discovery of admissible evidence is reasonable. The Court does agree with Plaintiff, however, that Defendants' request is not proportional to the needs of the case and it would be unduly burdensome and intrusive to require Plaintiff to produce all messages with Ms. Todd, regardless of the content. *See In re Pork Antitrust Litigation*, 2022 WL 972401, at *10 ("[T]he fact that the texts were sent to or from work-related contacts does not mean the content of the texts was work-related, let alone that the content

was relevant to the claims or defenses in this case.") Messages relating to the events underlying this action, however, are relevant to Plaintiff's claims against Defendant and must be produced if they exist. The Court thus limits Plaintiff's obligation under RFP No. 6 to non-privileged communications in Plaintiff's possession pertaining to the events underlying this action. The Court notes that Plaintiff has separately filed a motion to quash a subpoena issued to Jessica Todd requesting production of Ms. Todd's text messages. (*See* Doc. 90.) That motion is addressed below in Part III.

### 2.    Motion for Protective Order

Plaintiff asks the Court to enter a protective order "prohibiting further discovery into [her] private communications." (Doc. 86 at 1.) Under Federal Rule of Civil Procedure 26(c)(1), a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" if good cause is shown. The burden to prove good cause is on the person moving for a protective order, "which requires a showing that specific prejudice or harm will result if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (cleaned up). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Federal Trade Comm. v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 2187021, at *4 (D. Ariz. May 28, 2021) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

Because the Court has ordered Plaintiff to produce her text messages and finds that she has not met the burden to prove good cause, the Court declines to enter the protective order that Plaintiff seeks. Instead, Plaintiff's required production should be appropriately designated under the preexisting protective order in this case. (*See* Doc. 24.)

### III.   DISCOVERY OF JESSICA TODD'S TEXT MESSAGES

The State of Arizona issued a subpoena to Ms. Todd for all her text messages and emails with Plaintiff dating from April 1, 2019, through November 30, 2020, except for those relating to inmate health care. (Doc. 90 at 2.) Plaintiff filed a Motion to Quash the subpoena, arguing that it is unreasonably burdensome and an unwarranted invasion of Ms.

Todd's and Plaintiff's privacy. (*Id.* at 1.) The State responds that Plaintiff's motion is moot because Ms. Todd has "informed the State that she does not have any responsive documents." (Doc. 100 at 1.) The State also contends that Plaintiff does not have standing to object to the subpoena because she does not assert that the documents requested from Ms. Todd are subject to privilege. (*Id.* at 2.) While disputing the State's position on her standing to file her pending motion, Plaintiff agrees that it is likely moot considering Ms. Todd's response. (Doc. 101 at 1.) Plaintiff instead asks the Court to enter a protective order "prohibiting the State from having Ms. Todd search for or produce communications from devices other than her current cell phone." (*Id.*)

The State notes that it has not asked Ms. Todd to search for responsive communications on devices other than her current cell phone, so Plaintiff's request for a protective order is premature and does not demonstrate good cause for such an order at this time. *See* Fed. R. Civ. P. 26(c)(1); *see also In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424. Moreover, the parties seem to agree that Plaintiff's motion is moot because Ms. Todd avers that she does not have responsive text messages in her possession. Accordingly, Plaintiff's Motion to Quash is denied as moot.

## IV.   MENTAL EXAMINATION OF PLAINTIFF

Defendant McClelland moved for a court order requiring Plaintiff Marcella Fox to submit to a mental examination by a licensed psychologist pursuant to Federal Rule of Civil Procedure 35. (Doc. 75 at 1.) In response, Plaintiff agreed to the mental examination and indicated that the parties reached an agreement "to have their experts share raw data from Plaintiff's mental examinations directly with one another." (Doc. 83.) The parties then filed a joint Notice of Rule 35 Examination, setting Plaintiff's mental examination for November 1, 2022. (Doc. 85.) Thus, Defendant's Motion for Mental Examination is denied as moot.

## V.   THIRD-PARTY DEPOSITION SUBPOENAS

### A.   Background

On November 2 and 3, 2022, Defendant McClelland noticed the depositions of

non-parties Brittney Fountain and Kysha Slocumb (the "Movants"), respectively.[4] (*See* Doc. 88-1.)  In response, Movants' filed an objection to the depositions, a motion to quash the deposition subpoenas, a motion for a protective order, and requested an evidentiary hearing, if needed. (Doc. 88). Defendants separately responded (Docs. 98, 99) and Movants and Plaintiff submitted replies (Doc. 103, 107). The State filed a motion to strike both replies for raising new arguments. (Doc. 112.)

Defendant McClelland has previously offered to cancel the opposed depositions if Plaintiff will stipulate to exclude their testimony and any references to their accusations against him at trial. (Doc. 98 at 2.) Plaintiff stated that she will remove the Movants from her witness list via email on September 21, 2022, but that position is not yet reflected in Plaintiff's latest supplemental disclosures served on October 21, 2022. (*Id.* at 4.) According to Defendant McClelland, Plaintiff has also "declined to enter into a stipulation excluding all evidence and testimony regarding [the Movants'] allegations against McClelland from [Plaintiff's] trial." (*Id.*) Plaintiff's reply vaguely asserts the depositions are not necessary because "[t]hey settled their own claims with the State, left the Department, and have no further role in this litigation." (Doc. 103.)

**B.    Legal Standard**

The Federal Rules of Civil Procedure govern the scope and method of discovery. Rule 26 governs the scope of discovery, Rule 30 governs procedures for depositions, and Rule 45 governs subpoenas. Both litigants and third parties are subject to discovery under the Rules. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984). Rule 45(d)(3)(A) directs a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv); *see also Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10409840, at *1 (D. Ariz. Nov. 6, 2017). A party issuing a subpoena has a duty to avoid causing undue burden or expense on the recipient.

---

[4] Defendant McClelland's response brief indicates that the parties have been attempting to schedule the Movants' depositions since August 2022 when their own cases against Defendant McClelland and the State of Arizona settled.

1   *F.D.I.C. v. Garner*, 126 F.3d 1138, 1145-46 (9th Cir. 1997). The Court may quash or

2   modify a subpoena to cure the objection. *Flatow v. Islamic Republic of Iran*, 305 F.3d

3   1249, 1254 (D.C. Cir. 2002).

4   Relatedly, Rule 26(c) requires that a court limit the extent of discovery—including

5   that which is obtained by a subpoena—if it "can be obtained from some other source that

6   is more convenient, less burdensome, or less expensive" or "is outside the scope permitted

7   by Rule 26(b)(1)." Fed. R. Civ. P. 26(c)(i), (iii). Rule 26(b)(1), in turn, broadly permits

8   "discovery regarding any nonprivileged matter that is relevant to any party's claim or

9   defense and proportional to the needs of the case," considering, among other factors, "the

10  importance of the discovery in resolving the issues, and whether the burden or expense of

11  the proposed discovery outweighs its likely benefit." *Hausauer v. City of Mesa*, No.

12  CV-15-01796-PHX-ROS, 2017 WL 6515963 at *1 (D. Ariz. Apr. 5, 2017) (internal

13  quotations omitted); Fed. R. Civ. P. 26(b). Ordinarily, "[t]he burden is upon the party

14  seeking [a protective] order to 'show good cause' by demonstrating harm or prejudice that

15  will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir.

16  2004), cert. denied, 544 U.S. 905 (2005).

17   **C.   Defendant State of Arizona's Motion to Strike**

18   The State of Arizona filed a Motion to Strike Plaintiff's and Movants' replies,

19  arguing that they both raise new legal arguments. (Doc. 112 at 1). In the alternative, the

20  State seeks the opportunity to file a sur-reply to address the arguments raised in the replies.

21  (*Id.* at 2.) Plaintiff responds that the State's stated reason to strike her reply, that it "raises

22  new arguments regarding the scope of her deposition," is too vague and unclear. (Doc. 115

23  at 1.) Plaintiff also asserts that her reply is entirely responsive to the State's argument

24  regarding the burden of the proposed depositions on Movants. (*Id.* at 1-2.)

25   The Court agrees with Plaintiff and finds that both replies are responsive to

26  Defendant McClelland's response to Movants' motion. Defendant McClelland's response

27  asserts that Movants have failed to establish "undue burden" because the relevant test is

28  limited to incurred expenses or lack of personal knowledge. (Doc. 98 at 7-8.) Both replies

respond to that argument by discussing the burden imposed by the emotional harm Movants would experience at their depositions based on Defendant McClelland's attorney's conduct at Plaintiff's deposition. Any case law and legal theories referenced in the replies are related to those responsive arguments and are properly before the Court. Thus, the State's Motion to Strike is denied.

### D.  Analysis

At the outset, both Defendant McClelland and the State of Arizona argue that Movants' motion, filed three days prior to the scheduled depositions and two months after the depositions were noticed, is untimely. Given the importance of the issues at stake and the potential for harm to nonparties if the depositions go forward as noticed, the Court will consider the merits of the motion notwithstanding Defendants' timeliness arguments.

Movants assert that their depositions would provide no value to the case while causing severe emotional distress. (Doc. 88 at 4-5.) They further argue that Defendants fail to show that the need for the depositions outweighs the substantial burden they would cause because Defendant McClelland has already admitted to having sexual encounters with them. (*Id.* at 6.) Defendant McClelland's response argues that "Plaintiff has put, and continues to put, [Movants'] allegations that [he] sexually assaulted them at issue in this litigation, and apparently intends to introduce evidence of the alleged assaults at trial." (Doc. 98 at 1.) Specifically, Defendant McClelland argues that Plaintiff "attempts to establish that [her] claims of assault are supported by evidence of a pattern or practice of similar behavior." (*Id.* at 4.) Defendant McClelland also notes that Plaintiff intends to introduce investigative reports that reference Movants' claims against him, and he is entitled to depose Movants on that basis. (*Id.* at 6.) Finally, Defendant McClelland argues that Movants "communicated with Plaintiff regarding her claim, and likely have discoverable information about statements made by Fox regarding her claims of sexual assault." (*Id.* at 7.)

For its part, the State argues that Plaintiff's theories of liability rely on Movants' allegations and information provided during the combined investigation of all three

- 15 -

women's claims. (Doc. 99 at 1.) In particular, the State contends that Plaintiff must rely on Movants' allegations to avoid the State's immunity defense raised in their pending summary judgment motion. To avoid summary judgment, the State argues that Plaintiff must establish that Defendant McClelland had a propensity to engage in inappropriate contact with women, including Movants. (*Id.* at 3.) The State further argues that even if Movants do not testify at trial, their depositions are still necessary "to provide context for the statements they made or received" during the course of the investigation and to "establish foundation for relevant documents." (*Id.* at 4.) In response, Movants and Plaintiff both argue that Defendant McClelland's lengthy and intrusive deposition of Plaintiff reveals his intention to "further humiliate and punish" Movants for reporting the alleged assaults. (Doc. 103 at 5; Doc. 107 at 7-8.)

"Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009) (citations omitted). "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). "The proper way to afford this special consideration is to 'weigh the burden to the subpoenaed party against the value of the information to the serving party. Generally, this requires consideration of relevance, the need of the party for the [discovery], the breadth of the [] request, the time period covered by it, the particularity with which the [discovery is] described and the burden imposed.'" *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Systems*, No. CV-19-00257-PHX-DWL, 2019 WL 250429 at *3 (D. Ariz. Jan. 17, 2019). "As part of this inquiry, the Court may evaluate whether information requested through a non-party subpoena is readily available from a party." *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2022 WL 15518274, at *4 (D. Ariz. Oct. 27, 2022).

The subpoenas issued to Movants do not include any limitations on the scope of the deposition or identify what topics Defendant McClelland plans to raise. (*See* Doc. 88-1.)

The Court finds that an unlimited deposition into any topics of Defendant's choosing would be over broad, disproportional to the needs of the case, and unduly burdensome on Movants. *Columbia Broad. Sys., Inc.*, 666 F.2d at 371. The Court also finds, however, that Defendants have stated a reasonable and compelling need to take the Movants' depositions on limited, relevant issues. Movants' testimony would provide context on their own statements to investigators not currently in any party's possession. Moreover, Plaintiff has admitted that she spoke to Movants' regarding her allegations against Defendant McClelland throughout the investigation. Thus, the Defendants are entitled to ask Movants about their version of those events that may undermine Plaintiff's asserted timeline of events.

In the interest of balancing Defendants' need for this discovery with Movants' right to privacy and right to be free from undue burden and harassment, the Court shall require Movants to sit for limited depositions on the following topics only:

1.     The specific facts underlying their allegations against Defendant McClelland;

2.     Statements made to investigators during the ADC's investigation of Defendant McClelland's alleged misconduct, including any documents that incorporate those statements; and

3.     Conversations and communications they had with Plaintiff pertaining to Plaintiff's claims against Defendants.

Because Plaintiff has agreed that Movants will not testify at trial, any other topics pertaining to Movants' personal lives, sexual and mental health histories, or that would bear on their credibility as a trial witness are not relevant or proportional to the needs of the case. Given the sensitive nature of the allegations, Movants have established good cause for a limited protective order preventing discovery of such information.[5] *Rivera*, 364 F.3d at 1063. Defendants have established that the limited deposition topics above, however, are

---

[5] The Court finds that both parties have fully briefed the issues and an evidentiary hearing would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* Fed. R. Civ. P. 78(b).

relevant and necessary to defend against Plaintiff's allegations that Defendant McClelland had a pattern or practice of inappropriate sexual conduct with female coworkers. *See Hausauer*, 2017 WL 6515963 at *1.

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the parties' Joint Motion for Discovery Dispute (Doc. 74) is granted in favor of Defendant State of Arizona in part. Within 21 days of this order, Plaintiff shall:

1.    Conduct another search for text messages responsive to RFPs 1, 2, and 4-6, as modified by this Order, including text messages prior to November 18, 2020; and

2.    Upon completion of that search, produce any responsive, non-privileged messages.

3.    If any responsive messages are withheld as privileged, Plaintiff shall produce a privilege log setting forth which privilege she seeks to invoke and how that privilege precludes disclosure.

4.    If no additional responsive messages are located, Plaintiff shall file a sworn statement explaining her additional search and attesting that she could not find any responsive messages.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Protective Order (Doc. 86) is denied;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Subpoena Duces Tecum (Doc. 90) and Defendant's Motion for Mental Examination of Plaintiff (Doc. 75) are denied as moot;

**IT IS FURTHER ORDERED** that Defendant State of Arizona's Motion to Strike (Doc. 112) is denied; and

**IT IS FINALLY ORDERED** that Ms. Fountain's and Ms. Slocumb's Motion to Quash (Doc. 88) is granted in part, as follows:

1.    Ms. Fountain's and Ms. Slocumb's request for an evidentiary hearing is

denied;

2.    Ms. Fountain's and Ms. Slocumb's motion to quash their deposition subpoenas is granted in part. The noticed depositions shall be limited to the following topics: (a) the specific facts underlying their allegations against Defendant McClelland; (b) statements made to investigators during the ADC's investigation of Defendant McClelland's alleged misconduct, including any documents that incorporate those statements; and (c) conversations and communications they had with Plaintiff pertaining to Plaintiff's claims against Defendants; and

3.    Ms. Fountain's and Ms. Slocumb's motion for a protective order is granted in part, as discussed herein.

Dated this 19th day of December, 2022.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge