**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcella Fox, | No. CV-21-01089-PHX-MTL |
| Ms. Fox, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

At issue are Defendants Jason McClelland and Jeffrey Van Winkle's Motions for Summary Judgment targeting Plaintiff Marcella Fox's surviving federal constitutional claims under 42 U.S.C. § 1983. (Docs. 132, 134.) The Motions are fully briefed. (Docs. 132, 134, 146, 151, 157, 163.) The Court rules as follows.

## I.    LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) ("The

[C]ourt must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial.").

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The Court does not have a duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## II.   BACKGROUND

Ms. Fox worked as a contract nurse in Arizona State Prison Complex ("ASPC")-Florence, an Arizona Department of Corrections, Rehabilitation and Reentry ("ADC") prison. (Doc. 146-1 at 3.) While there, Ms. Fox became acquainted with Mr. McClelland. (*Id.* at 4.) Mr. McClelland was employed at ASPC-Florence as a corrections sergeant. (Doc. 146-7 at 4.) He was also a member of the Tactical Support Unit ("TSU"), a specialized unit called out to respond to crises within the prison. (*Id.* at 5; Doc. 132 at 73.) As such, Mr. McClelland had access to a designated TSU building. (Doc. 146-7 at 7.)

Over time, Ms. Fox and Mr. McClelland became friends. (Doc. 146-1 at 5.) The two worked closely because Mr. McClelland often responded to Ms. Fox's requests for assistance with inmates. (*Id.* at 7.) Such requests were regular practice, as corrections officers worked with nurses to ensure their safety while providing inmate treatment. (Doc. 146-3 at 3-4; Doc. 146-4 at 4.)

The friendship became strained when Mr. McClelland began making unwelcome comments to and about Ms. Fox in 2017. (Doc. 146-1 at 10-11; Doc. 146-3 at 10-11; Doc. 146-4 at 7-8) In 2019, Mr. McClelland increasingly sought out her company at work. (Doc. 146-3 at 9, 11; Doc. 146-4 at 9-11; Doc. 146-6 at 4-5.) In response, Ms. Fox informed him that she was not interested in a romantic relationship. (Doc. 146-1 at 17-18.)

1    One night, Ms. Fox ran into Mr. McClelland outside one of the buildings at
2 ASPC-Florence. (Doc. 146-2 at 12; Doc. 146-7 at 15.) They walked together to his vehicle.
3 (Doc. 146-2 at 13; Doc. 146-7 at 16-17.) But when they reached the vehicle, Mr.
4 McClelland told Ms. Fox that he had forgotten his car keys in the TSU building. (Doc.
5 146-7 at 17.) Mr. McClelland asked Ms. Fox to go back with him, and she agreed. (Doc.
6 146-2 at 13, 15.)

7    Once at the TSU building, Mr. McClelland unlocked the door and the two stepped
8 inside. (*Id.* at 17.) Ms. Fox states that she spent several minutes examining old photos on
9 the wall, but as she was doing so, Mr. McClelland approached her from behind. (Doc.
10 146-2 at 18-19, 21.) He touched Ms. Fox's back and put his arms around her, but she
11 shrugged away and told him, "[i]t's not going to happen." (*Id.* at 21.) The two continued
12 to walk around the TSU building until Mr. McClelland sat at a desk, "almost blocking the
13 door." (*Id.* at 22.) Ms. Fox continued to tell him, "[n]o" and, "[i]t's not going to happen."
14 (*Id.*) Mr. McClelland then stood and pushed her against a wall. (*Id.* at 22-23.) He tried to
15 take off her clothes, kissed her neck, and groped her. (*Id.* at 19-20.) Ms. Fox repeated,
16 "[n]o, please stop, please stop." (*Id.* at 20.)

17    Ms. Fox left the TSU building and told her supervisor, Stephanie Oplinger, what
18 happened. (*Id.* at 24-26; Doc. 146-3 at 15.) The next morning, Ms. Fox reported the incident
19 to Lieutenant Barry Defeo, who helped Ms. Fox report it to the ADC. (Doc. 134-2 at 28-29;
20 Doc. 134-14.) The ADC's Criminal Investigations Unit ("CIU") opened an investigation.
21 (Doc. 134-6 at 14.) Mr. Van Winkle, the warden of ASPC-Florence, was informed of the
22 incident via an email from Deputy Warden of Operations Hope Ping. (Doc. 134-4 at 14.)
23 After discussions with his supervisor, Mr. Van Winkle transferred Mr. McClelland to
24 ASPC-Eyman. (*Id.* at 15-16.)

25    Shortly thereafter, Mr. McClelland resigned from his position with the ADC. (Doc.
26 134-3 at 16; Doc. 134-4 at 17.) The resignation foreclosed any possibility of administrative
27 investigation or inquiry. (Doc. 151-5 at 30-31.)

28

- 3 -

III.   **DISCUSSION**

     A.   **Mr. McClelland's Motion**

     Mr. McClelland argues that summary judgment is appropriate because "the record lacks evidence that [he] was acting under color of state law" when the sexual assault allegedly occurred. (Doc. 132 at 4.)

              1.   **Applicable Law**

     Section 1983 imposes liability upon persons who deprive another of their federally guaranteed rights while acting under color of state law. 42 U.S.C. § 1983. "It does not create any substantive rights; rather, it is a vehicle whereby plaintiffs can challenge actions by government officials." *Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1197, 1203 (D. Ariz. 2008). To make out a violation of § 1983, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

     The issue here is whether Mr. McClelland acted under color of state law when he allegedly sexually assaulted Ms. Fox. (Doc. 132 at 1.) "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action ha[s] exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "There is no rigid formula for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (citation omitted). Instead, "whether an officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)) (cleaned up). The analysis involves "a process of sifting facts and weighing circumstances" that, "at bottom," considers "whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Garnier v.*

1  *O'Connor-Ratcliff*, 41 F.4th 1158, 1169 (9th Cir. 2022) (citations omitted).[1]

2          **2.      Application**

3          The evidence, framed in the light most favorable to Ms. Fox, is insufficient to

4  demonstrate a meaningful connection between Mr. McClelland's alleged conduct and his

5  government status or the performance of his duties. Mr. McClelland relies heavily upon

6  *Barfield v. Arizona*, No. CV-09-00864-PHX-FJM, 2010 WL 3719221 (D. Ariz. Sept. 15,

7  2010) to emphasize this point. There, this Court determined that three defendants accused

8  of verbally and physically harassing their fellow corrections officer had not done so under

9  color of state law. *Id.* at *1. Specifically, the defendants made frequent inappropriate sexual

10 comments to and about the plaintiff, handcuffed her, and locked her in a basement. *Id.*

11 at *1-3. While the defendants used state-issued equipment to torment the plaintiff, this

12 Court emphasized that "[s]tate employees do not act under color of state law merely

13 because they are in uniform, on duty, and using state equipment." *Id.* at *9. Instead, "the

14 location, timing, and equipment involved in any given situation must be viewed in context

15 with their connection to the use or pretense of authority and their effect on others." *Id.*

16 Additionally, this Court noted that "[i]n the absence of supervisory authority, public

17 employees who harass coworkers do not generally do so under the color of state law

18 because they are not using or purporting to use state authority." *Id.* at *10.

19         Like the defendants in *Barfield*, Mr. McClelland did not act under color of state law

20 merely because he used state-issued equipment (the key to the TSU building) and state

21 property (the TSU building itself) to allegedly commit his wrongful act. There is no

22 evidence that his use of that equipment was connected to his authority as a state employee.

23 Moreover, he exercised no supervisory authority over Ms. Fox. There is likewise no

24 ───────────────

[1] The parties initially urged the Court to apply a three-factor test utilized by the Ninth
25 Circuit in *Anderson*. (Doc. 132 at 4, 6-8; Doc. 146 at 5-10.) Recent authority suggests that
   those factors are better employed in cases addressing state employees who committed their
26 alleged wrongdoing while off duty. *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015);
   *Lucas v. Cnty. of Fresno*, No. 1:18-cv-01488-DAD-EPG, 2019 WL 7370418, at *4 (E.D.
27 Cal. Dec. 31, 2019); *Campbell v. Cochise Cnty.*, No. CV-21-00002-TUC-SHR, 2023 WL
   1966409, at *5 (D. Ariz. Feb. 13, 2023). Counsel for Ms. Fox and Mr. McClelland
28 acknowledged as much at Oral Argument on November 3, 2023. (Doc. 176.) Mr.
   McClelland was on duty when he allegedly committed the sexual assault. (*See* Doc. 146 at
   8; Doc. 146-7 at 15.) Accordingly, the Court will not apply the factors.

evidence that he attempted to use any authority he may have had by virtue of his position to influence Ms. Fox's decision to accompany him to the TSU building. Thus, he did not act under color of state law.

Ms. Fox argues the contrary for two primary reasons. First, she contends that Mr. McClelland invoked his government status at the time of the purported sexual assault. (Doc. 146 at 6, 8-9.) While *Barfield* indicates that coworker-on-coworker harassment does not ordinarily occur under color of state law absent some supervisory authority, Ms. Fox argues that her situation differs from the typical. (*Id.* at 6.) Though Mr. McClelland was not her supervisor he exercised significant influence over her, says Ms. Fox. (*Id.* at 8-9.) Specifically, as a corrections sergeant, he was among those responsible for ensuring the nurses' safety while they administered inmate care. (Doc. 146-2 at 6-10; 146-3 at 3-4; Doc. 146-4 at 16-17; Doc. 146-5 at 3-4.) Accordingly, Ms. Fox argues, Mr. McClelland had the power to make her work extremely difficult, or even unsafe. (Doc. 146 at 9.) Ms. Fox was aware of this fact, and she states that it affected her decision not to report Mr. McClelland's prior inappropriate behavior. (Doc. 146-1 at 13; Doc. 146-2 at 6-10.)

But Ms. Fox's evidence that she generally feared Mr. McClelland's ability to make her work difficult is insufficient. (Doc. 146 at 9; Doc. 146-2 at 15-17.) When Ms. Fox accompanied Mr. McClelland to his car, she did so willingly. (Doc. 146-2 at 12-14.) When Mr. McClelland realized he did not have his car keys and needed to go back to the TSU building, Ms. Fox agreed to accompany him because she wanted to see historic photos housed in the building. (*Id.* at 15-17.) She does not say that she accompanied Mr. McClelland to the TSU building because he insinuated that he could make her work difficult or unsafe. (*See id.*) Nor does she present evidence that Mr. McClelland detained her, told her that she needed to go with him for safety reasons, or otherwise invoked his state authority to lead her to believe that she needed to go with him. (*See generally* Doc. 146-1 through -8.)

Second, relying on *McDade*, Ms. Fox argues that the purported sexual assault was connected to Mr. McClelland's official duties because he was expected to work closely

with the nurses, and he was authorized and expected to access the TSU building. (Doc. 146 at 8, 10.) In *McDade*, a state employee used her government login credentials to access and abuse the plaintiff's confidential information. 223 F.3d at 1137-39. The Ninth Circuit emphasized that, in doing so, the state employee had acted during work hours and accessed the confidential information via a restricted database using a password provided as part of her employment. *Id.* At 1140. Her "status as a state employee enabled her to access the information [and] she invoked the powers of her office to accomplish the offensive act." *Id.* The court concluded that she had "acted under color of state law since there is undisputed evidence that [she] abused her responsibilities and purported or pretended to be a state officer during the hours in which she accessed the computer." *Id.* At 1141.

According to Ms. Fox, Mr. McClelland's conduct was highly similar in nature. (Doc. 146 at 8.) He purportedly committed the sexual assault during work hours while on duty as a state employee. (Doc. 146-2 at 17-24; Doc. 146-7 at 15.) He used a secured point, to which he had access by virtue of his position, to carry out the sexual assault. (Doc. 146-2 at 17-24.) Rather than a restricted database, he accessed a restricted building. (*Id.* at 17.) Instead of a government password, he used a physical key provided by his employer. (*Id.*; Doc. 146-7 at 7.) In sum, his "status as a state employee enabled h[im] to" commit the alleged sexual assault and "[]he invoked the powers of h[is] office to accomplish the offensive act."

Ms. Fox's argument essentially boils down to the notion that Mr. McClelland, like the defendant in *McDade*, was able to commit his wrongful act because of the authority and privileges he enjoyed by virtue of his official position. (*See* Doc. 146 at 8.) In other words, the wrongful act would not have occurred but-for Mr. McClelland's state employment. (*See id.*) But that, alone, was not why the *McDade* court found that the defendant had acted under color of state law. 223 F.3d at 1140-41. In *McDade*, the defendant's wrongful act was directly connected to her job responsibilities. *Id.* Those responsibilities included accessing a secured computer database that contained confidential information. *Id.* Additionally, she pretended to perform those job responsibilities while

1    committing her wrongful act. *Id.* In this case, although Mr. McClelland had the privilege

2    of using the TSU building, his job responsibilities did not include giving tours of the

3    building. According to Ms. Fox's descriptions, his job responsibilities generally included

4    protecting inmates and staff on site, including the nurses while they provided inmate care.

5    (Doc. 146 at 6.) But he did not take Ms. Fox to the TSU building because of any security

6    threat, real or otherwise. (*See* Doc. 146-2 at 15-17.) Nor did he take her there to provide

7    patient treatment. (*Id.*) Thus, taking Ms. Fox to the TSU building and allegedly committing

8    a sexual assault therein cannot reasonably be described as connected to his official duties.

9         The Court finds that, on the evidence presented and considered in the light most

10   favorable to Ms. Fox, a reasonable jury could not conclude that Mr. McClelland acted

11   under color of state law. Accordingly, it will grant Mr. McClelland's Motion for Summary

12   Judgment.

13        **B.    Mr. Van Winkle's Motion**

14        Mr. Van Winkle argues that he is entitled to qualified immunity. (Doc. 134 at 1.)

15   Public officials are entitled to qualified immunity from civil damages unless their conduct

16   violates "clearly established statutory or constitutional rights of which a reasonable person

17   would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When determining

18   whether a public official is immune from liability for acts performed in an official capacity,

19   "qualified immunity represents the norm" *Id.* at 807. It protects "'all but the plainly

20   incompetent or those who knowingly violate the law.'" *Ziglar v. Abbasi*, 582 U.S. 120, 152

21   (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

22        The plaintiff has the burden of proving that the public official is not entitled to

23   qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To defeat a

24   qualified immunity defense, a plaintiff must demonstrate that "(1) the official violated a

25   statutory or constitutional right, and (2) that the right was clearly established at the time of

26   the challenged conduct." *Id.* Ms. Fox argues that both prongs are met here. First, she asserts

27   that Mr. Van Winkle violated her rights under the equal protection clause by failing to

28   redress her report of sexual assault. (Doc. 151 at 8-11.) Second, she contends that her right

to redressal of her report was clearly established at the time. (*Id.* at 11-12.) Mr. Van Winkle responds that there is no evidence that he violated Ms. Fox's right, and even if he did, that right was not clearly established at the time. (Doc. 134 at 8-12.)

The Court begins with the first prong. The United States Supreme Court has "long recognized that sex-based discrimination by state actors that does not serve important governmental objectives and is not substantially related to the achievement of those objectives" violates the equal protection clause. *Sampson v. Cnty. Of Los Angeles By & Through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (collecting cases). The Ninth Circuit has held that sexual harassment can constitute impermissible sex-based discrimination. *Bator v. Hawaii*, 39 F.3d 1021, 1027-29 (9th Cir. 1994). To make out such a claim against Mr. Van Winkle, Ms. Fox must demonstrate "either that [Mr. Van Winkle's] office or department had an official policy of promoting sexual harassment, or that [Mr. Van Winkle] intentionally refused to redress the [] sexual harassment." [2] *Sampson*, 974 F.3d at 1024 n. 8 (citing *Alaska v. EEOC*, 564 F.3d 1062, 1069 (9th Cir. 2009)).

Ms. Fox argues that Mr. Van Winkle intentionally refused to redress her report of sexual assault. (Doc. 151 at 8-11.) She presented evidence that Mr. Van Winkle did not immediately place Mr. McClelland on leave or reprimand him. (Doc. 151-5 at 18-19.) Instead, Mr. Van Winkle allowed Mr. McClelland to continue working his normal post at ASPC-Florence "without restrictions."[3] (*Id.*; Doc. 151 at 10.) Moreover, Mr. Van Winkle did not transfer Mr. McClelland until instructed to do so by a supervisor. (Doc. 151-5 at 18-19, 23; Doc. 151-6 at 4.) Ms. Fox concludes that "[Mr.] Van Winkle took no steps to protect [Ms. Fox] or other women from more harassment while the criminal investigation was underway." (Doc. 151 at 10.)

Mr. Van Winkle counters that he did not ignore Ms. Fox's allegations but addressed

---

[2] Because vicarious liability does not exist under § 1983, Ms. Fox must prove that Mr. Van Winkle personally participated in the violation of her constitutional rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).
[3] Ms. Fox admits that Mr. Van Winkle restricted Mr. McClelland to work certain areas during the investigation. (Doc.151 at 10.) She argues, however, that this restriction was ineffective without additional safeguards. (*Id.*)

them according to ADC policy. (Doc. 134 at 8-11.) Though on annual leave when Ms. Fox reported the alleged sexual assault, he consulted with his supervisor when he returned and determined that Mr. McClelland's shifts should be confined to one unit within ASPC-Florence during the investigation. (Doc. 134-4 at 3.) Upon learning of a second accusation against Mr. McClelland, Mr. Van Winkle immediately reported it to his supervisor who ordered Mr. McClelland transferred to a different prison. (Doc. 134-4 at 4; Doc. 134-17.) This was accomplished one week after Ms. Fox reported the alleged sexual assault and the investigation began. (Docs. 134-19, 134-20.)

Mr. Van Winkle further presented evidence that he was incapable of taking the action demanded by Ms. Fox. He could not place Mr. McClelland on administrative leave because the facts were still under investigation. (Doc. 134-4 at 6-7.) Mr. McClelland disputed Ms. Fox's accusations and ADC policy limited Mr. Van Winkle's ability to act immediately. (*Id.* at 8; Doc. 134-11 at 41; Ariz. Admin. Code § R2-5A-B604.) Mr. Van Winkle did not have independent authority to transfer Mr. McClelland, "summarily dismiss" him, or even place him on administrative leave. (Doc. 134 at 10; Doc. 134-4 at 7, 15; Doc. 134-11 at 41; Ariz. Admin. Code § R2-5A-B604.) After Mr. McClelland was arrested, Mr. Van Winkle facilitated Mr. McClelland's voluntary resignation, ending his employment and ensuring that he was ineligible for rehire. (Doc. 134-4 at 17; Doc. 134-21.) Ms. Fox does not dispute any of these facts. (*See generally* Doc. 151.)

Ms. Fox finally argues that Mr. Van Winkle's treatment of female employees is further evidence of his intent to discriminate. (Doc. 151 at 10-11.) She relies on *Fuller v. Idaho Department of Corrections*, 865 F.3d 1154, 1167 (9th Cir. 2017) for the proposition that "a male supervisor's favorable treatment of a male employee accused of sexual assault compared to less favorable treatment *of the female employee who reported the assault* is strong evidence of purposeful discrimination." (*Id.* at 9) (emphasis added.) But Ms. Fox has presented no evidence that Mr. Van Winkle treated *her* unfavorably compared to Mr. McClelland. (*See generally id.* at 9-11.) Instead, she points to Mr. Van Winkle's threat to discipline a female employee for posting about Mr. McClelland on social media while the

investigation was ongoing. (*Id.* at 10-11.) Mr. Van Winkle explained that posting about an active investigation on social media was a violation of department policy. (Doc. 151-5 at 26-29.) But even taking Ms. Fox's characterization as true, it is not evidence that Mr. Van Winkle intended to discriminate against *her*.

The Court finds that on the undisputed facts, no reasonable juror could conclude that Mr. Van Winkle violated Ms. Fox's equal protection rights. Mr. Van Winkle did not ignore the allegations, nor did he punish Ms. Fox for bringing them. *Compare Bator*, 39 F.3d at 1029-30 (denying qualified immunity where the government employer ignored allegations of sexual harassment); *Alaska*, 564 F.3d at 1069 (finding a violation of equal protection where the government employer responded to allegations of sexual harassment by punishing the accuser). Instead, he took action as permitted by ADC policy during a pending investigation. As evidence mounted against Mr. McClelland, Mr. Van Winkle responded by facilitating Mr. McClelland's transfer and later soliciting his resignation.

Ms. Fox's inability to establish that Mr. Van Winkle violated her constitutional rights is dispositive of the qualified immunity issue. *Ashcroft*, 563 U.S. at 735. Therefore, the Court need not consider whether "the right was clearly established at the time of the challenged conduct." *Id.* Because Ms. Fox cannot demonstrate that Mr. Van Winkle violated her constitutional rights under the equal protection clause of the Fourteenth Amendment, Mr. Van Winkle is entitled to qualified immunity and the Court will grant his Motion for Summary Judgment.[4]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant Jason McClelland's Motion for Summary Judgment (Doc. 132).

---

[4] The Court discussed Plaintiff's Motion for Entry of Judgment under Rule 54(b) (Doc. 166) at Oral Argument on November 3, 2023 (Doc. 176). The Court dismissed the Motion without prejudice, leaving open the possibility for a renewed motion as necessary following the Court's ruling on Defendants Mr. McClelland and Mr. Van Winkle's Motions for Summary Judgment. (Doc. 176.) Because the Court will grant both of those Motions, there is no need for Ms. Fox to file a renewed Rule 54(b) motion as final judgment has now been entered in this case.

1          **IT IS FURTHER ORDERED granting** Defendant Jeffrey Van Winkle's Motion

2    for Summary Judgment (Doc. 134).

3          **IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in

4    Defendants Jason McClelland and Jeffrey Van Winkle's favor.

5          Dated this 7th day of November, 2023.

6

7

8                                              Michael T. Liburdi
                                               United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28